498 P.2d 560

Sam CHU, Appellant,

v.

Karl G. RONSTADT and Marilyn H. Ronstadt, husband and wife, and New Pueblo Constructors, Inc., Appellees.

No. 2 CA–CIV 1102.

Court of Appeals of Arizona, Division 2.

June 28, 1972.

Whitehill, Berger, Gin & Karp, by David D. West, Tucson, for appellant.

Robertson, Molloy, Fickett & Jones, by Peter Johnson, Tucson, for appellees.

HATHAWAY, Judge.

Appellant, Sam Chu, brought suit against appellees in the Superior Court of Pima County for an alleged breach of contract concerning an alleged farm land lease by Chu to appellees.

The primary issue at trial was whether a valid contract had been entered into by the parties. The case was tried to the court and judgment subsequently entered in favor of appellees. The trial court made the following pertinent findings of fact:

"2. That on or about July 4, 1969, at plaintiff's store in Marana, Arizona, plaintiff and defendant Karl G. Ronstadt entered into preliminary negotiations for the possible lease of plaintiff's land for the purpose of raising fall lettuce.

3. That defendant Karl G. Ronstadt disclosed to the plaintiff that he was agent for and acting on behalf of defendant New Pueblo Constructors, Inc.

4. That the plaintiff and defendant Karl G. Ronstadt, failed on July 4, 1969, and any time subsequent thereto, to discuss and agree when payment for the land to be leased would be made to the plaintiff.

5. That defendant Ronstadt, on or about July 4, 1969, advised the plaintiff that another party from California would be involved in the raising of fall lettuce on plaintiff's land and that such individual would inspect plaintiff's land the following weekend and the parties would then proceed to finalize the lease.

6. That defendant Karl G. Ronstadt forwarded to the plaintiff by letter of July 7, 1969 a check in the sum of $500.00 for the purpose of securing an option from the plaintiff until Sunday or Monday of the next week within which to lease plaintiff's land.

7. By letter of July 14, 1969, after plaintiff's property had been inspected by the individual from California, defendant Karl G. Ronstadt advised the plaintiff that his land would not be leased."

Appellant refutes finding No. 5 claiming that the condition, if any, was approval, rather than inspection, but admits that there is testimony in the record to support the finding. It is his position that appellees' course of conduct subsequent to the conversation of July 4, 1969, was entirely at variance with the disclosure. In particular, appellant relies on a letter of July 7, 1969, contending that it set forth the terms of the lease. The July 7th letter reads:

"Mr. Sam Chu

Marana,

Arizona

Dear Mr. Chu:

As discussed with you on July 4, 1969, with Dick Little and myself, we will enter into a lease on your 150 acres of plowed barley adjacent to your store.

It is our understanding you will lease this land for fall lettuce and that it is immediately available. The price for this land will be $50.00 per acre, and we will reimburse you for the plowing you have done at the rate of $8.00 per acre.

If these conditions are correct, attached hereto is our check of earnest money for $500.00 as you requested, which amount will be applied to the payments that will be due under the lease upon its conclusion.

The other party involved with us on this lease will be here Sunday or Monday next week and we will proceed then to finalize this lease.

Very truly yours,

NEWS PUEBLO CONSTRUCTORS, INC.

/s Karl G. Ronstadt

Karl G. Ronstadt

President

KGR/dg

Attachment"

Appellees' exhibit A is the voucher stub to the $500 check. It contains the following:

"7/7/69 Earnest money toward rental of 150 acres of farm land near Marana for fall lettuce crop. $500."

The trial court made the following conclusion of law:

"2. The July 4, 1969 meeting between the plaintiff and defendant Ronstadt, the July 7, 1969 letter of defendant Ronstadt to the plaintiff, and the July 7, 1969 telephone communication between plaintiff and defendant Ronstadt were all preliminary negotiations between the parties, not constituting an agreement in presenti, but only an agreement to enter into an agreement or an option to lease plaintiff's land."

Appellant contends the evidence does not support this finding or finding of fact No. 6, set forth above, and urges us to set aside the judgment.

This court will not set aside a judgment merely because there is a conflict

in the evidence. Evidence will be taken in the strongest manner in favor of the appellee, and if there is any reasonable evidence to support the judgment of the lower court, it will be sustained. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961).

Findings of fact numbers four and five, properly supported by evidence, disclose that on July 4, 1969, the parties entered into preliminary negotiations without any intent to presently finalize a lease contract. The appellant does not dispute these findings of fact and this court must accept them. Sato v. First Nat'l. Bank, 12 Ariz. App. 263, 469 P.2d 829 (1970); Owen v. Mecham, 9 Ariz.App. 529, 454 P.2d 577.

Appellant relies heavily on the contents of the letter of July 7th as forming and representing the alleged contract. We must carefully scrutinize this letter in order to decide the existence or nonexistence of the alleged lease contract. The word used by appellees upon which appellant so strongly relies is "earnest". This word is defined in Black's Law Dictionary 598 (4th Ed.Rev.1968) as follows:

"The payment of a part of the price of goods sold, or the delivery of part of such goods, for the purpose of *binding the contract.*" (Emphasis added)

Appellant would have us rule that the appellees, by using the words "earnest money" absolutely bound themselves to the technical legal definition of such words and therefore committed themselves to the performance of the alleged lease contract. It is elementary in contract law that the manifested objective intention of the parties is the controlling factor in the interpretation of the wording of a writing. Ernst v. Deister, 42 Ariz. 379, 26 P.2d 648 (1933). The character of contracts must be determined by their provisions rather than by labels. Intermountain Bldg. & Loan Ass'n v. Gallegos, 78 F.2d 972 (9th Cir. 1935). It is therefore incumbent upon us to interpret the meaning of these words in light of the intention of the parties as shown by the whole writing, and not to isolate the words and give them a meaning foreign to such intention.

Appellant points to paragraph one of the letter of July 7th, set out above, as clearly establishing a present intention to enter into a contract; the words relied upon specifically read ". . . we will enter into a lease on your 150 acres of plowed . . . ." The Arizona Supreme Court, when called upon to rule whether a writing was sufficient to establish a lease contract decided that words similar to the ones in the letter of July 7th (We *will* pay you . . .) were not, standing alone, sufficient to establish a present intention to enter into a lease contract. Cypert v. Holmes, 81 Ariz. 64, 299 P.2d 650 (1956).

The last paragraph of the July 7th letter clearly shows that the appellees had no present intention of entering into a contract but did have an intention of finalizing an agreement some time in the future. Of course, a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof. If all the conditions of the postponed writing are specified in such agreement, it is an agreement *in praesenti,* and as such becomes immediately enforceable. But where the conditions of the deferred contract are not set out in the provisional one, or where material conditions are omitted, it is not a contract *in praesenti* because the minds of the parties have not met and may never meet. Peer v. Hughes, 25 Ariz. 105, 213 P. 691 (1923). The appellant urges this court to interpret this last paragraph as merely showing an intention to formalize a present agreement in the future. In order for us to do so, it is necessary to find that no material conditions have been omitted from the deferred contract. In the case of Cypert v. Holmes, *supra,* our Supreme Court stated:

"It may be conceded that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the agreement that any of the terms of the lease, no matter how

unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled. [Citations omitted]" 81 Ariz. at 66, 299 P.2d at 651.

The last paragraph of the July 7th letter, coupled with the limited terms agreed upon in the letter, clearly shows that the parties intended to settle other pertinent and important terms of the lease agreement sometime in the future.

The parties to the alleged lease contract did not agree as to the starting date of the lease, or the method of payment (one of the most important aspects) and furthermore, the letter of July 7th is not sufficient to permit the court to establish the rights and duties of the parties respecting the purported lease contract.

If any doubt remains as to the sufficiency of terms for a lease contract, the last paragraph of the July 7th letter together with finding of fact number five, clearly show that finalization of the contract depended upon inspection by a third party.

The insufficiency of the terms for a lease contract, the objective intention of the parties to agree on terms at a future date, and the dependence of the contract upon inspection by a third party are the compelling reasons why we conclude that no enforceable lease contract resulted from the letter of July 7th.

 We find further, that no option contract resulted from the letter of July 7th since an option contract also requires a present intention to enter into contract. Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835 (1953).

The judgment is affirmed.

KRUCKER, C. J., and HOWARD, J., concur.