537 P.2d 591

**JOY ENTERPRISES, INC., an Arizona Corporation, Appellant,**

v.

**Robert L. REPPEL and Jane Doe Reppel, his wife, Kurion Tom Tracy and Jane Doe Tracy, his wife, Reppel Steel & Supply Co., Inc., an Arizona Corporation, Appellees.**

No. 11685.

Supreme Court of Arizona,
In Division.

June 27, 1975.
Rehearing Denied Sept. 16, 1975.

Streich, Lang, Weeks, Cardon & French by Dan M. Durrant, Ronald Jay Cohen, Robert E. B. Allen, Phoenix, for appellant.

Powers, Boutell, Fannin & Kurn by James Powers, Phoenix, for appellees.

LOCKWOOD, Justice:

Appellant, hereinafter called lessee, filed this action in the Superior Court seeking specific performance under an alleged lease, or in the alternative damages for breach thereof. The Superior Court directed a verdict in favor of appellees-lessors on what we understand to be the following facts.

The lessors entered into an agreement to sell the lessee the capital stock of Joy Enterprises, Inc. Joy Enterprises, Inc. was a corporation engaged in the manufacture of mobile homes. Prior to the sale, all of the stock in Joy Enterprises was owned by Reppel Steel & Supply, and Joy Enterprises was doing business on property owned by Reppel. Concurrent with the sale of the capital stock of Joy Enterprises appellant as lessee entered into an agreement with appellees-lessors Reppel and Tracy acting for Reppel Steel & Supply Co. By the agreement, the premises upon which Joy Enterprises was located were to be leased to appellant. In addition, appellees agreed to build an additional permanent structure upon the premises. This dispute arises out of that portion of the agreement by which appellees as lessors promised to lease the premises to appellant. The agreement provided in pertinent part as follows:

"3. First party [appellees] *shall cause a lease to be granted to Second party* [appellant] on the premises presently leased by Joy Enterprises, Inc. for the operation of said corporation's business, said lease to be for a period of Fifteen (15) years commencing September 13, 1971 for the consideration of rent in the sum of Fifteen Hundred ($1,500.00) Dollars per month paid in advance as a net, net, net monthly rental by Second Party to First Party or nominee. Second Party shall pay advance rental in the sum of Two Thousand Two Hundred Fifty ($2,250.00) Dollars, receipt thereof being acknowledged by First Party on this date and thereafter the monthly rental commencing November 1, 1971 in the sum of Fifteen Hundred ($1,500.00) Dollars shall be paid each month during the period of the leasehold term.

"Provided Second Party be not in default under the terms *of this agreement or the lease agreement,* then Second Party shall have an option for an additional Five (5) years lease provided the rental be mutually agreed upon and provided Second Party exercises said option by giving written notice to First Party not later than Six (6) months before the expiration of the term of the original lease."

"4. *First Party shall at their expense enclose an area 80' X 200' on the east side of the presently existing building*

*structure utilized by Joy Enterprises, Inc. upon request by Second Party* at any time pursuant to written notice to First Party within Six (6) months from the date of this agreement, subject however to proper authorization and permits by any City of Phoenix, Maricopa County or State of Arizona department or subdivision having jurisdiction thereof, and subject to Second Party procuring said authorization or permit. In the event said authorization or permit is procured then *said structure* shall be completed by First Party within a reasonable time and upon completion Second Party shall pay to First Party or nominee additional rental in the sum of Seven Hundred fifty ($750.00) Dollars per month net, net, net—with all rental payments to be payable monthly and in advance during the term of *lease agreement referred to in this agreement.*" (Emphasis supplied.)

The parties who originally signed the agreement were A. J. Goulder and Leland Larson, for Chardon Mobile Homes, predecessor in interest to lessee, and Robert L. Reppel and Kurion Tom Tracy, as lessors. A. J. Goulder was the principal stockholder in Chardon Mobile Homes, Inc. and Leland Larson was its president. Robert L. Reppel was the president and principal stockholder of Reppel Steel & Supply Company. Tom Tracy, Reppel's son-in-law, was an officer in Reppel Steel and Supply and owned the remaining stock in that corporation.

The testimony disclosed that the enclosure referred to in paragraph 4 of the agreement was to be an additional manufacturing building, although its exact nature and cost were in dispute. Subsequent to the execution of the foregoing agreement, an addendum agreement was prepared and executed. By it, A. J. Goulder and his wife, Julia, disclaimed personal liability on the "lease agreement between the parties in the original agreement, * * *" leaving only Chardon Mobile Homes, Inc. and Leland Larson on the agreement.

The advance rent was paid and accepted, and the appellant (lessee) took immediate possession. Rent was paid each month and accepted by lessors Reppel and Tracy. Demand was timely made upon the lessors to build the additional structure, but no building of any kind was built.

Six months after lessee took possession of Joy Enterprises, it filed a lawsuit under the paragraph of the agreement quoted above which called for the subsequent addition of a manufacturing facility. Appellant sought either that the construction of the building be ordered or that damages be awarded. At the time of oral argument, the premises had been vacated.

We first observe that it is not within the power or province of this court to revise, modify, alter, extend or remake an agreement. Our duty is confined to the construction or interpretation of the one which the parties have made for themselves. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966).

The agreement specifically stated that the "first party [appellees] shall cause a lease to be granted to Second Party [appellant]." This language clearly indicates an intention at some later date to set out in a more formal way the terms and conditions of the proposed agreement. The agreement provided for certain consequences in the event of default "of this agreement *or the lease agreement*" again indicating a separate lease agreement was contemplated. (Emphasis supplied.) At the time this agreement was executed, it was handwritten by the appellees' counsel, and the appellant's counsel was not present. There is no doubt that the instrument fails as a legal conveyance of a leasehold interest.

The issue now becomes whether, although the agreement falls short of a valid lease, the appellees as lessors are estopped to deny its enforceability as a contract.

It is appellant's position that estoppel will be applied to prevent injustice and that it would be unconscionable to permit the lessors to maintain a position inconsistent with one in which they have acquiesced. See Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957).

We note first that under Arizona statute A.R.S. § 33–437, a defective conveyance may be enforced as a contract to convey. A.R.S. § 33–437 provides:

"When an instrument in writing, intended as a conveyance of real property or some interest therein, fails wholly or in part to take effect as a conveyance by virtue of the provisions of this chapter, it is valid nevertheless and effectual as a contract upon which a conveyance may be enforced, as far as rules of law permit."

In Builders Supply Corporation v. Marshall, 88 Ariz. 89, 352 P.2d 982 (1960) this Court defined estoppel as a concurrence of the following elements:

(1) Conduct by the party to be estopped by which he intentionally or through culpable negligence induces another to believe and have confidence in certain material facts;

(2) Action by the party so induced in reliance, justifiably taken, upon the apparent state of the facts; and

(3) Injury to the party so induced which is caused by his reliance. See also: Robbins Investment Co. v. Green Rose Associates, Inc., 8 Ariz.App. 596, 448 P.2d 440 (1969). There can be no estoppel if any of the essential elements are lacking. Knight v. Rice, 83 Ariz. 379, 321 P.2d 1037 (1958).

In Capital Outdoor Advertising, Inc. v. Harper, 7 N.C.App. 501, 172 S.E.2d 793 (1970), the court held that a lessee was estopped to assert the invalidity of a lease because of insufficient description of the premises where he had gone into possession of the premises under the lease, had paid the stipulated rent and otherwise exercised control over the premises. The court reasoned that a party will not be permitted to accept the benefits arising from certain terms of a contract while denying the effect of other terms of the same agreement. We think the same reasoning can be applied to the instant case with regard to the conduct of the lessor. The lessors accepted the rent and the lessee made substantial improvements in approximately the amount of $21,000 on the premises, yet now the lessors deny the existence of an enforceable lease.

Lessors urge that this was an agreement to make an agreement omitting vital provisions which were left for future negotiation, and thus could not serve as a basis for imposing upon Reppel either a 15-year lease or an open-ended obligation to construct a building, citing Cypert v. Holmes, 81 Ariz. 64, 299 P.2d 650 (1956). In that case we stated:

" 'It may be conceded that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the agreement that any of the terms of the lease, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled.' " 81 Ariz. at 66, 299 P.2d at 651.

In the instant case, however, lessee merged Charden Industries and Joy Enterprises so that they both operated under the name "Joy Enterprises, Inc.". The lessee moved its manufacturing business to the location of Joy Enterprises and started in business there.

Lessee had, at the time of suit paid approximately $92,000.00 for the stock of Joy Enterprises and, in addition, had paid a substantial amount of its obligations. Lessors were aware that lessee also installed a

$13,000 sprinkler system on the premises to comply with the Phoenix Fire Code. Lessee also built another paint facility on the premises to comply with the City Code. The manufacturing facility operated by Joy Enterprises was on property adjacent to Reppel Steel so that there can be no question but that lessee's acts were known to lessors.

There are unresolved disputes as to the responsibilities of the parties in constructing the building which we do not decide. The sole question we determine at this time is whether there were rights under a lease which the lessors are estopped to deny.

We find that all of the elements of estoppel are present in this case. During the installation of the improvements, the lessors made no attempt to dissuade the lessee from making the improvements, nor did they at any time state to the appellant their belief that the lease was not valid.

■ There is no magic in the word "lease". A lease is a species of contract for the possession and profits of tenements and land, either for life, or for a certain period of time, or during the pleasure of the parties. See Katz v. Exclusive Auto Leasing Inc., Del.Super., 282 A.2d 866 (1971). The agreement described the property to be leased, gave a definite agreed term, a definite and agreed price of rental and included the time and manner of payment. These terms in conjunction with the conduct of the parties estop appellees from denying the relationship of landlord and tenant.

■ Some of the terms of the contract concerning the rental and the additional structure have been reduced to writing. However, a contract need not be entirely in writing, it may be in part oral and in part written. The fact that the contract was ambiguous does not render it void. The contract must be so construed as to carry into effect the reasonable intentions of the parties at the time the agreement was made. Ruhsam v. Ruhsam, 110 Ariz.

326, 518 P.2d 576 (1974); Ashton v. Ashton, 89 Ariz. 148, 359 P.2d 400 (1961); Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957). Parol evidence may be properly admitted to explain and make certain the ambiguities. Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082 (1952).

The judgment of the superior court is reversed with directions for a new trial to determine the responsibilities of the parties.

CAMERON, C. J., and HOLOHAN, J., concurring.